This panel for the week. We have two cases to be hearing this afternoon. Looks like opening counsel is in place, ready to go. I'll try not to hold you up for another moment. The first case is Richard Winfrey et al. v. Leonard Johnson. We hear from Mr. Hilfen. And not for the first time. You can de-mask when you get up here. Thank you, Your Honor. May it please the Court, I know that the Court's review, sorry, William Hilfen for Deputy Leonard Johnson, I know that the Court's review of the briefing demonstrates a significant number of points of judgment in favor of Deputy Johnson, substantiate the need for, at the very least, a new trial. In the limited time that I have today, if it pleases the Court, I'd like to address the various reasons why, the numerous reasons, why the Court should reverse and render judgment in favor of Deputy Johnson. First and foremost, the appellees failed in their obligation to obtain jury findings on all of the elements of their claims, and particularly as to the question of a Franks violation. As the Court knows, the Supreme Court has never extended its holding in Franks to omissions within an arrest warrant affidavit. This Court did in Hale, but even in Hale, this Court based its ruling on both misleading false statements and omissions. Now here, at this stage, the trial court obtained a jury verdict in which the jury found that the one misleading statement found by this Court, that is as to the drop sent lineup, was not intentionally or recklessly included in the affidavit with the intent to misdirect the magistrate. So there can be no liability for that, and in fact, under Hart v. O'Brien, the Court credits that back into the affidavit in making a determination of probable cause. This case has been around quite a while. Were you Johnson's attorney when the affidavit was drafted? No, Your Honor, nor was I, I'm sorry? Do you have an attorney? What stage, Judge? When the affidavit was drafted. Well, the record evidence showed without dispute that the affidavits were actually drafted by the then district attorney, who by the time Deputy Johnson was sued, had passed away, a fellow named the contrary. Deputy Johnson testified that Mr. Burnett, the elected district attorney, drafted those affidavits. And there's significant evidence that substantiates that, including the fact that the affidavits were identical, even down to the misspellings and wrong word choices of affidavits presented for search warrants by the sheriff, Lacey Rogers. Now, by the time of trial, Sheriff Rogers testified that he had developed an infirm memory. He was a particularly older gentleman by the time of trial, and he could not remember whether he or the district attorney drafted the affidavit. But Deputy Johnson was clear on that. Moreover, Deputy Johnson and the Rangers, Rangers Huff and Duff, pure coincidence, I understand, both testified that there was a meeting, and this is amply set forth in the record, a meeting called by a district attorney, Burnett, for the purpose of announcing that he intended to charge these two individuals with the crime of murder. And he directed that Deputy Johnson would sign the affidavits for the arrest warrants. Deputy Johnson signed those arrest warrants, I think, I'll look and check, I'll check for rebuttal, but I think it was either the very same day or the very next day, which Deputy Johnson also testified was because they were prepared for him already. I was not his attorney at that time, obviously. As Judge Elrod pointed out, when this case came before the court in 2017, I believe, I was not his attorney in the first summary judgment either. But I mention that because Judge Elrod made an excellent point at that time, which is the court was focused primarily, and the Winfrey 1 opinion demonstrates that in the 2012 reversal of the summary judgment, this court was focused primarily on the drop sent inclusion in the affidavit. And the court remanded this case for discovery on the question of was that drop sent information intentionally placed in the affidavit for the purpose of misleading the magistrate to sign a warrant application, or was it mistaken? And at that time, it applied both to Sheriff Rogers, who again had executed identical affidavits, because he had done that for search warrant purposes, as well as to Deputy Johnson. And as to both, both testified that Burnett made them, that they were not aware that the drop sent information was inaccurate. The trial judge at that time, Judge Hughes, granted summary judgment to both, and the judgment in favor of Sheriff Rogers became final when the plaintiffs sought to appeal that judgment. They appealed only the summary judgment in favor of Deputy Johnson. Now, I mentioned Judge Elrod's comment during that hearing because at the time of that case, and I think it's significant to the question of qualified immunity, at the time of that hearing, the issue that the appellees were pushing was the drop sent. Their claim of a constitutional violation was the drop sent. After this court reversed the summary judgment in favor of Deputy Johnson and found that it was the drop sent, which may have been intentionally falsely stated, but also identified what this court said were three omissions, which were carried forward of the decision from 2012, the plaintiffs seized on the omissions as the problem as opposed to, well, they were arguing the drop sent as well. As I said, there is never, there is not a case that I can find that says that omissions alone are sufficient to provide a basis for a constitutional violation under the Fourth Amendment. The Supreme Court has not said it. I can't find a Fifth Circuit case that turns on omissions alone. And in fact, I'll preview now because my time is, as usual, running short. I'll preview now that when we get to the question of clearly established law, that's where this case clearly requires reverse and render. And that is because even the appellees state the law only at the highest level of generality, which is an with the intent to secure an arrest warrant. But nothing reaches the level of granularity and specificity that would have told Deputy Johnson that where we arrive today, now we don't have the drop sent misleading statement anymore. The jury has found that that was a mistake, just as Judge Hughes did in his summary judgment. Didn't we already decide in Winfrey 2 and Winfrey 3 that the law was already clearly established? Aren't we bound by that? There's two answers to that because I heard two questions, if I may, Judge. I think the answer is yes. And the answer to whether you're bound by that is no. This Court has, from time to time, suggested that the law may be clearly established, I want to say simply, when the Fifth Circuit, the Supreme Court, continually rejects that contention. Westby is a good example cited in the briefing in which the Supreme Court in 2018 has said a single circuit may not establish clearly established law. Perhaps most importantly, though, in the last, in the opinions issued last two weeks from the Supreme Court, they're in my Rule 20HA letter brief filed last week, and I'm overruled our prior cases where we have said that our circuit law does clearly establish the law for our circuit. Well, except that I don't think that this Court has so stated so specifically. And I'll give you an example. The appellees cite this Court to two cases that this Court has decided in which the Court has supposedly said once this Court states something, it's clearly established law. But actually, that's not the case. The first is in the Malir v. Spears case. In a footnote, the appellees contend that that establishes clearly established law. I'm sorry, that the Fifth Circuit said there that when we say it, it's clearly established law. But actually, if you read the quote, it says, relying solely on Fifth Circuit and Supreme Court cases, for example, would be excessively formulistic, but they would loom largest in our inquiries. The second case that the appellees cite in that regard is Juarez v. Aguilar from 2011. It doesn't say that at all. At page 336, this Court says precedent of this Court and the Supreme Court was sufficient to provide appellants with fair notice. So this Court, as I said, this Court has suggested, but never held, that the clearly established law is established by a panel decision of this Court. If it has, I've not found it. And if it has, it runs afoul of Supreme Court precedent. I'm quite familiar... To my first question, whether Winfrey 2 and Winfrey 3 said the law here was, in fact, clearly established, we did in those two cases. We did say the law was clearly established. Well, the Court said the law is clearly established by Hale, that omissions and... by Franks and Hale. Franks speaks not to omissions at all, and Hale speaks to omissions and misleading information. But it is correct that the Court, the panels in Winfrey 2, and I don't know if Winfrey 3, I'll have to look, but I think you're right, Judge, that both of those panels said because... both of those panels said the law is clearly established. But that doesn't clearly establish the law as of 2007. They may have found that the law is clearly established as of the time they wrote the opinion, but they could not have said that the law was clearly established as of 2007 without citing an opinion that clearly established that law. And the problem with that is if you look at what the appellees cite, and I should say, other than Franks and Hale, to my recollection, I don't think Winfrey 2 or Winfrey 3 even address that beyond the conclusory statement the law is clearly established that that is the case. Well, even if we believe they blundered in saying the law was clearly established, they said it. I mean, they said what they said. I don't see how we can disregard it at this point. Well, I think the panel has to disregard it because it was a question, first of all, of the clearly established law based upon a question of whether there were both misleading statements and omissions, which you no longer have. Here, you would have to take this case into consideration based upon how it arrives now after a jury verdict. The jury is determined that there is no intentional misleading statement. And that was the analysis that the Winfrey 2 and Winfrey 3 courts were doing. And with all due respect to the panel in Winfrey 3, they pretty much said they were bound by the decision in Winfrey 2. But there's no question that the Winfrey 2 panel may have thought under the facts they were reviewing that the law was clearly established. But they did not say the law is clearly established that omissions alone are sufficient to make out a Franks violation. And that would run afoul of the Supreme Court's own authority. So I understand the Court's internal operating rules, and I don't know where they go when they run into Supreme Court authority directly and opposite to a prior holding. That's for the Court. Whether that issue has to be addressed en banc, which I understand is the answer, is something we'd have to leave for another day. But I do want to point out that the law was not clearly established in the manner in which this Court has said is necessary. As Judge Oldham said, it's the plaintiff's burden to show the law is clearly established, and to quote him, it's a doozy. It's quite difficult except to show a case of similar facts. And to answer your question, Judge, well, at this point, this is not a case of similar facts. It's not even a case of similar facts to Winfrey 2 and Winfrey 3. Under Hart v. O'Brien, the Court reads back in the drop sent because it was mistakenly included. And that's, by the way, where I started out. I went to qualified immunity. I want to be sure I answer the Court's questions. But I wanted to come back to the fact that the trial judge was either required to submit the question of probable cause or what this Court has called arguable probable cause to the jury, or to make a determination of probable cause after he had the jury's findings. Once he knew that you read back in the drop sent under Hart v. O'Brien, and he knew that one of the omissions was simply inaccurately stated by this Court, both in Winfrey 1 and Winfrey 2, and that is that Campbell had made the statement that a cousin was there instead of the children when, in fact, the jury and the trial judge knew that was not the case. Campbell said that a cousin was there with the children and senior. Once the trial judge knew that, he was obligated to make the same type of determination that this Court made in Winfrey 2 and Winfrey 3. But now, with the facts having been established by the evidence at trial and the jury's verdict, the trial judge refused to do that, and he refused to submit the question to the jury. This Court now, as this Court did in Winfrey 2 and Winfrey 3, can and should make that analysis, and when you make that analysis, you find that probable cause supported the award. Thank you very much for your time. All right, counsel. May it please the Court, Elizabeth Wong for Richard Winfrey, Jr. and Megan Winfrey. This is the fifth time that the Winfrey's have been before this Court. This is the fourth time that the Winfrey's and Johnson have been before this Court. When this Court remanded Megan and in 2018 and 2019, it was extremely clear about what it wanted the trial judge to do, and the trial court held the trial that this Court ordered it to hold. The Court expressly stated twice in Winfrey 2 and once in Winfrey 3 that they were remanding for trial on the issue of directed affidavit, would not have established probable cause, and the trial was going to be on Johnson's scienter, and that is exactly the trial that Judge Hanks held. Mr. Helfand talks about qualified immunity and clearly established law, but if this Court thought that Defendant Johnson was entitled to qualified immunity because the law was not clearly established, that you couldn't put material misstatements and omissions into an arrest warrant affidavit intentionally, knowingly, or recklessly, it would have given him qualified immunity any number of times that we have been to this Court before. This could have ended a long time ago if that were the law. So that can be put to the side. The question here is what do you do about the fact that the jury did not find intentional, reckless, or knowing behavior on the drop trail misstatement, but found that Johnson was intentional, reckless, and knowing on the three omissions? What do you do with that? What the District Court did with that when it entered judgment in favor of the Winfrey's, consistent with the verdict, was a finding that the corrected affidavit, meaning an affidavit, let's say we leave in the drop trail. The drop trail, remember, is the information that is the claim that the scent, the dogs, Pikett's dogs, trailed the scent of the Winfrey's to Burr's house when in fact it was actually Chris Hammond's scent, somebody else's scent altogether. The question is what do you do with that? When the District Court entered judgment on the verdict, what it was finding was that there was no probable cause with a corrected affidavit as a matter of law. In Davis v. Hodgkiss, which is 11-4-329, a decision from this court in August of 2021, it held that probable cause, the ultimate determination of probable cause is one that the court can make as a matter of law. And that case is extremely illustrative because in that claim, what the District Court below had found was that there was a genuine dispute of material fact about the misstatements in the affidavit. However, this court said, regardless of whether there's a dispute of material fact on the misstatements, we find that even a corrected affidavit would not have been sufficient to establish probable cause and therefore the officer, or would have been enough to establish probable cause, and so the officer was entitled to summary judgment. Now, if the Fifth Circuit thought that everything needed to be submitted to the jury, including the question of probable cause, it would have remanded for a trial because there was no dispute that there was a dispute of fact about the misstatements in the affidavit. And Mr. Hoffman just conceded in his oral argument just now that the probable cause question does not have to go to the jury. He said the District Court should have made a determination about whether a corrected affidavit would have established probable cause, and the District Court did in its order on the post-trial motions when it entered judgment on the verdict. He did not make an independent decision, did he? I'm looking at the order now. It seems to me he's just saying that Fifth Circuit made me do it. Isn't that all he's holding? So he's not actually finding, holding as a matter of law that there was probable cause. He's just saying the Fifth Circuit told me that there was, so his wording reflects that. He does not express, you're right, he does not expressly go through the analysis of probable cause, but he affirmed the judge, he entered judgment in favor of the Winfrey's in the face of the defense arguments otherwise. I understand your argument and you didn't, I mean, using the material that you have, but I hope you will concede that is not his judgment that there's probable, his decision that said, well, both words are inappropriate. He's not making an independent decision that there's probable cause. Would you agree with that? Yes, he does not expressly do that. I mean, I think it's clear from there was extensive post-trial motions, the District Court understood that this case was coming to this Court. One of the reasons in Winfrey 2 that Judge Jolly said that probable cause has been resolved, he actually said it in the initial opinion that then was replaced by the second, and I don't see it in the second opinion, is that this is not the usual appeal from interlocutor, interlocutory appeal just dealing with qualified immunity. It's from a final judgment based on summary judgment. As I understand the issue before the District Court, though, that came up on Winfrey 2, the only issue before the Court was qualified immunity. Do you know offhand, do you recall what was decided that was appealed that became Winfrey 2 in this Court? Was it just qualified immunity issue? Well, I can check it if you're not sure. I'm not sure that makes a difference, but I'm wondering if you can run with that, Annie, the idea that because it was summary judgment, finding qualified immunity, entering judgment for the defendant officer, does that somehow affect whether probable cause was properly decided by the Fifth Circuit? I see. Okay. So you're asking if the decision that was up on review in Winfrey 2 was just on the qualified immunity question, then? Is that a different posture than when it's up there on summary judgment dismissing the case in favor of the defendant, which is the observation that Winfrey 2 makes, that somehow that was worth noting? I'm not sure that it makes a difference, but in both Richie and Megan's prior appeals, they were final. I mean, we did appeal final judgment because the District Court had entered final judgment in favor of Johnson. I don't recall offhand if it was solely on a qualified immunity issue, but no, actually, now that I'm thinking about it, and there is something in Winfrey, there is actually a footnote in Winfrey 2 that addresses this. The District Court had held that a corrected affidavit would, he found against us on the probable cause question, and actually, I believe it is footnote 2, footnote 2 in the Winfrey 2 decision that this court then discussed. Did the District Court mention that the fact that the reason he was keeping probable cause himself rather than sending it to the jury was because it was a question of law? Yes. Yes, the District Court did say that, and it said that throughout the trial, we had numerous sidebars on this question, and it did say that, and it said it again in the order on the post-trial motions. Yes. And so, the way that . . . Well, just to make sure I know what you're saying, I remember reading a colloquy where Judge Hanks, if you're talking about the trial that Judge Hanks conducted, takes issue, and defense counsel was saying that this was a proper issue for the jury, and Judge Hanks is saying, I've never been as limited as I am in this case. Part of it has to do with there's been so many appeals in this case already, but it seems to me he was saying it's inappropriate, probably. He didn't quite say it, not to give some of these issues to the jury, but the Fifth Circuit had hamstrung him so much. So, I don't . . . I mean, if you're suggesting that all along he was planning to make an independent decision on probable cause, I sure didn't see that in his commentary during the trial. Is that what you're asserting? No, no, Judge. And what I'm saying is that, I mean, Judge Hanks certainly, throughout the trial, in the various colloquies that the parties had with him, he was repeatedly consulting the Fifth Circuit opinion. He wanted to do exactly what this . . . Complaining about the Fifth Circuit, consulting whatever. I mean, he wanted to make sure that he kept within the mandate and did what he was told to do. He did a good job of that. He was being quite conscientious. And so . . . But the point is, even if Your Honor believes that he did not make a . . . Even if your determination is that he did not make an independent determination of probable cause, it's a question of law. This Court can. And the question is, what did the drop trail add? Nothing. Nothing. All it told the officers was that the Winfrey's had been to Murray Burr's house. And they, themselves, the Winfrey's told the officers that. They told Sheriff Rogers that. They had visited him. They had invited him to go to church. He was somebody who lived nearby. There was nothing that the drop trail added to probable cause. The entire case . . . And Sheriff Rogers and Leonard Johnson had that information from Keith Pikett in 2004. Did they get a warrant for the Winfrey's in 2004 or 2005? No. They didn't do it until David Campbell came forward. They knew. And Sheriff Rogers admitted this at trial, as well. He said that the case went cold. Pikett added nothing. And so, even if . . . You know, the Court can determine, as a matter of law, that even if we added the drop trail information back into the affidavit, because the jury found that that was not intentional, knowing, or reckless, that the material omissions, the inconsistencies that were left out, would have utterly destroyed Campbell's credibility and would not have been enough for a reasonable magistrate to issue the warrant. Another issue that the appellees, or that the appellants . . . I'm so used to being the jury instructions concerning this issue about the children versus the cousin. They have completely waived any objection to those jury instructions. When Judge Hanks first proposed those jury instructions concerning that material omission on day two of trial, Mr. Helfand said . . . The judge read it to us, and Mr. Helfand said . . . This is at ROA 9640. Judge, let me say to start, I actually think that is a great idea. He then proposed two modifications to what the judge was going to read to the jury, neither of which had anything to do with this statement about the cousin. And then, during the jury charge conference, he again did not object. He said no objection to the way those things are worded. That's ROA 11781-82. Then, when the jury question came back indicating that the jury was confused, Mr. Giles said that the appropriate response would be to refer back to the instructions as given. What they were counting on at the time was that the jury was just going to come back with a no on that material omission. And now, what they were doing in this court is Monday morning quarterbacking, which is not permitted. They cannot raise a waived issue to jury instructions in this court. Are there other specific questions that the court . . . Given the authority of getting to what Mr. Helfand spent so much time on, and certainly central to the case, about the clearly established law, Winfrey II, we can interpret what it means and the extent it would be fair to characterize it. He's not being unfair, but we wouldn't necessarily agree with him. What he's really talking about is a combination of omissions and misstatements is all that we said was clearly established. What case law do you have other than Winfrey itself that would say omissions by themselves, that if they were added in might give a different look to what was stated, even though the statements themselves are not incorrect? What law would you have to say that it is clearly established such is a violation of Franks? I don't have in front of me, but there are . . . I mean, there are cases that we cited in our brief from this court. Melton v. Phillips is one of them. I don't remember offhand if that one concerned solely a material . . . Winfrey itself cites Bankston. Bankston then cites an opinion by Judge Garza named Tomlin, all of which are talking about omissions, but to the extent that all we have are Fifth Circuit, he's raised the issue that's not good enough. We're a great court, I'm sure he'd say, but we need more authority than just from us. So do you have any Supreme Court authority that supports this or authority from other circuit? But I think you're telling me that right now you can't recall. Right now I don't have one for you. Move on. With respect to the question of . . . I mean, I would love to address any other questions that Your Honor specifically have. If you don't have anything further, we don't have any. Thank you for your argument. I'm always torn in rebuttal on how much time I should spend answering the questions and how much time I should spend saying something I think I need to say, but I want to answer the questions to the extent that I can. I do want to respond to Ms. Wang's assention. I think this really is it in a nutshell. The appellees say the court held the trial, this court directed it to hold, but that's just clearly not true. I asked the court to rehear Winfrey II en banc, which was rejected in favor of a substituted opinion, and what the appellees have never reconciled and refused to acknowledge was there were two reasons for the substituted opinion that I pointed out. One was the DNA test was immaterial, the lack of herring evidence, which Judge Jolly authored in the substituted opinion, and two, it realigned correctly, consistent with Supreme Court and this court's authority, that at trial it would be the plaintiff burdened to disprove immunity. That was one of the two reasons the panel substituted Winfrey II, was at trial it would be the plaintiff burdened to disprove immunity. At trial and before trial, and this gets me to my wavering, my friend's argument of waver, long before trial when the case was reassigned to Judge Hanks, the appellees urged Judge Hanks to read the Fifth Circuit opinion as having foreclosed immunity, and the court can find, and I'm happy to provide it if the court wants, citations in the record repeatedly from the earliest pre-trial stage all the way through jury questions of the importance of the court allowing evidence and providing an instruction consistent with this circuit's pattern and questions on the issue of immunity, and the appellees kept telling Judge Hanks that this court had already foreclosed that, and Judge Hanks unfortunately believed that because he repeatedly said, I think the Fifth Circuit has determined that immunity is subsumed in the Fourth Amendment question of the invalid warrant, and obviously we know that's not true. The Supreme Court has rejected that repeatedly, including in Saussure versus Katz, but at the earliest stages, example in 9183, and this goes to my friend's argument of waiver. I don't know how many times I have to say it to a judge so as not to be accused of waiver. At 9183 in the record, which is a very early stage of this case, I think it's maybe before voir dire, it may have been in pre-trial, I can't recall now, Judge Hanks said, the Fifth Circuit has said, with these three things that should be or were included in the affidavit and should not have been or omitted from the affidavit, did this gentleman include or fail to include something that should have been or exclude something that should have been in knowingly? That is the question for the jury, and the Court went on to say, that is the only thing I'm going to allow the defendant to talk about, is whether he knowingly or intentionally put that information in the affidavit. And by the way, to Judge Shelford's question of Ms. Wang, we don't have Supreme Court authority on it, but interestingly enough, and I should say also, as to my friend's contention of waiver, the Court can find at 20477 through 204, oh, I'm sorry, that's the cause number, 6077 through 6081, my explication of why the plaintiff, the Capelli's jury instruction was totally wrong, because it told the judge just to ask the jury whether the Court, whether Deputy Johnson put this information in the affidavit or omitted it from the affidavit knowingly or misleadingly. Interestingly enough, so clearly I didn't waive it, I presented it prior to trial, but interestingly enough, in their proposed jury instruction, the Capelli's included Seventh Circuit law, and I pointed out that even Seventh Circuit law did not support the trial that Judge Hanks held. Specifically, the Seventh Circuit pattern jury charge explained that for an omission of fact to be material, the plaintiff must prove, quote, defendant deliberately omitted it to mislead the judge, not just omitted it. And this is where the whole trial broke down. Judge Hanks thought, and I think he was most sincere in his belief that he was executing the mandate of this Court, he thought the question for the jury was, was the affidavit made intentionally? That is, were the things that weren't in there not in there intentionally? The jury demonstrated that that wasn't the question. The jury questions made it clear that the question was, was this done with the intent to mislead? The Court should reverse and render judgment in favor of Deputy Johnson, but if it does not, it should certainly order a new trial in which he's entitled to present his claim of qualification. Was anyone else ever indicted for the murder of Murray Weinberg? No. Mr. Burnett died shortly thereafter, and it appears that the subsequent district attorney did not have the same zeal as Mr. Burnett did for the case. But of course, also, Judge, it was 2013 by the time that Richard Winfrey Jr. was acquitted. So it was a pretty long time after the murder that the acquittals came through. Thank you again for your time. All right, counsel. Thank you both. Look forward to Winfrey 5 sometime. All right. The next case, please stay.